**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Integrity Bank Plus,

                              Plaintiff,

v.

Talking Sales, Inc., Elm River Credit Union,
Steffes Auctioneers, John Doe and Mary Roe,

                              Defendants.

Civ. No. 04-4523 (RHK/JSM)

**MEMORANDUM OPINION AND ORDER**

---

Matthew R. Burton of Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, Minnesota, for Plaintiff.

Dean A Rindy of McConn & Rindy Law Office, Fargo, North Dakota; Jay D. Carlson and Sara K. Sorenson of Ohnstad Twichell, Fargo, North Dakota, for Defendant Talking Sales, Inc.

Scott R. Carlson of Hinshaw & Culbertson L.L.P., Minneapolis, Minnesota, for Defendant Elm River Credit Union.

Joseph A. Turman of DeMars & Turman, Ltd., Fargo, North Dakota, for Defendant Steffes Auctioneers.

---

**INTRODUCTION**

Plaintiff Integrity Bank Plus ("Integrity") alleges that Defendants Talking Sales, Inc. ("Talking Sales"), Elm River Credit Union ("ERCU"), and Steffes Auctioneers ("Steffes") unlawfully engaged in a business transaction without recognizing or satisfying Integrity's security interests in the property at issue. This matter comes before the Court

on summary judgment motions by ERCU and Steffes. For the reasons set forth below, the Court will deny both motions.

## BACKGROUND

Integrity is a bank with its main branch office located in Wabasso, Minnesota. (McCaffery Dep. Tr. at 8.) On November 6, 2003, Integrity loaned money to Wabasso Farm Equipment Rental, L.L.C. ("Wabasso Farm"), a company also located in Wabasso, Minnesota. (Eichten Dep. Tr. at 14, 17; Compl. ¶ 14.) To secure the loan, Wabasso Farm executed a promissory note and security agreement granting Integrity a security interest in the company's inventory, including five John Deere tractors (the "Tractors") at issue in this case. (Second Carlson Aff. Ex. 6.) On November 7, 2003, Integrity filed a financing statement with the Minnesota Secretary of State, which identified its security interest in Wabasso Farm's inventory. (Second Carlson Aff. Ex. 2.)

On January 21, 2004, Wabasso Farm sold the Tractors to Talking Sales, a company in Fargo, North Dakota. (Steffes Ex. 3.) Talking Sales and Wabasso Farm entered into a written agreement (the "First Agreement"), in which Talking Sales agreed to pay Wabasso Farm $340,000 for the Tractors. (Steffes Ex. 3.) To finance the sale, Talking Sales borrowed money from ERCU, a bank located in Kindred, North Dakota. (Steffes Ex. 4; Reis Dep. Tr. at 20-21.) To secure the loan, Talking Sales executed a

promissory note and security agreement granting ERCU a security interest in the Tractors.[1]  (Steffes Ex. 4.)

At the time Talking Sales purchased the Tractors, Brad Olstad, the owner of Talking Sales, intended to move the Tractors to Fargo, North Dakota, in order to sell them at a large and well-known consignment sale.  (Olstad Dep. Tr. at 30.)  However, Olstad found the cost of moving the Tractors to be prohibitive, and worried that Talking Sales might not be able to sell the Tractors locally.  (Olstad Dep. Tr. at 31, 35-36.)  To minimize the financial risk to Talking Sales, Olstad asked Jerry Eichten, the owner of Wabasso Farm, if he would consider entering into another agreement involving the Tractors.  (Olstad Dep. Tr. at 36.)  Talking Sales and Wabasso Farm entered into a subsequent written agreement (the "Second Agreement") dated February 17, 2004:

> This agreement is to confirm the payment arrangements between Talking Sales, Inc. and Wabasso Implement, Inc. for the (5) 9400 John Deere Tractors sold to Talking Sales, Inc. on 1-21-04.  (Serial numbers 001786, 001789, 001334, 001735, 001791)
>
> The (5) 9400 John Deere Tractors will be sold on the auction sale conducted by Steffes Auctioneers on March 4, 2004.  Wabasso Implement, Inc. will pay the interest on the loan at Elm River Credit Union relating to the above tractors.  Wabasso Implement, Inc. will pay the principal amount of $340,000 on the loan at Elm River Credit Union for Talking Sales, Inc. Wabasso Implement, Inc. will pay the 4% commission charged by Steffes Auctioneers to sell these tractors.

---

[1] In June 1998, ERCU filed a financing statement with the North Dakota Secretary of State, identifying its security interest in Talking Sales' "machinery now owned and hereafter acquired."  (First Carlson Aff. Ex. H.)  This filing includes the Tractors at issue.

> Any shortage will come out of the total auction proceeds. Any overage will be added to the total auction proceeds.
>
> Wabasso Implement, Inc. acknowledges receipt of the $340,000 wired by Talking Sales, Inc. on 1-23-04 to Integrity Bank Plus for payment of the above tractors.
>
> Wabasso Implement, Inc. will keep the insurance coverage on the 5 tractors in force and continue to list Elm River Credit Union as loss payee.

(Second Carlson Aff. Ex. 14.) This was the first time Talking Sales had ever entered into this type of agreement. (Olstad Dep. Tr. at 37.)

On March 4, 2004, Wabasso Farm sold all of its assets at an auction conducted by Steffes, an auction house located in Fargo, North Dakota. (Steffes Dep. Tr. at 9-10; Steffes Ex. 15.) Included in the auction were the Tractors, which sold to individual buyers for a total of $379,000. (Steffes Ex. 15.) From the proceeds of the sale, ERCU received $342,403.29, and Talking Sales received $7,580.00. (Steffes Exs. 12, 14.)

When Integrity's security interest in the Tractors was not satisfied following the auction, it commenced this lawsuit against Talking Sales, ERCU, and Steffes alleging claims for conversion, unjust enrichment, and negligence. (Am. Compl. ¶¶ 23-32.) On February 22, 2005, this Court denied Motions to Dismiss by ERCU and Steffes. Now before the Court are summary judgment motions by ERCU and Steffes.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). For the purposes of summary judgment, a fact is "material" if its resolution will

determine the outcome of the case, and an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>, 475 U.S. 574, 586-87 (1986). Upon a motion for summary judgment, the moving party carries the burden of showing there is no genuine issue of material fact, and all evidence and reasonable inferences must be viewed in a light most favorable to the non-moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## ANALYSIS

In this case, Integrity alleges claims for conversion, unjust enrichment, and negligence. Steffes and ERCU seek summary judgment on all three claims. The Court will address each issue in turn.

**I.   Conversion**

Integrity's first claim is for conversion, which is defined as the exercise of dominion and control over property inconsistent with, and in repudiation of, the owner's right in that property. <u>Rudnitski v. Seely</u>, 452 N.W.2d 664, 668 (Minn. 1990). Specifically, Integrity alleges that Steffes and ERCU converted the Tractors and refused to satisfy its security interest in the equipment. (Compl. ¶¶ 23-27.)

In order to sustain a claim for conversion, a party must have an enforceable security interest in the property at issue. <u>Farmers State Bank v. Easton Farmers Elevator</u>, 457 N.W.2d 763, 766 (Minn. Ct. App. 1990). In Minnesota, security interests are governed by Article Nine of the Minnesota Uniform Commercial Code ("MUCC").

Minn. Stat. §§ 336.9-101, et seq. Under the MUCC, a security interest in collateral continues after the secured property is transferred, meaning that any proceeds acquired from the transfer are subject to the security interest unless the secured party authorizes disposition of the interest. Minn. Stat. § 336.9-315(a). Therefore, when a debtor makes an unauthorized transfer of property encumbered by a security interest, the secured party may maintain a conversion action against the transferee. Farmers State Bank, 457 N.W.2d at 766.

However, there is an exception to this general rule. If the buyer of the property encumbered by a security interest created by the buyer's seller is a "buyer in ordinary course of business," such buyer takes the property free of the security interest. Minn. Stat. § 336.9-320(a). A "buyer in ordinary course of business" is defined as:

> A person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices . . . . Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Article 2 may be a buyer in ordinary course of business . . . .

Minn. Stat. § 336.1-201(9). The party claiming to be a "buyer in ordinary course of business" bears the burden of proof with respect to that issue. In re Certain Pharms. and Proceedings of Northland Providers, Inc., 78 F. Supp. 2d 954, 963-64 (D. Minn. 1999).

In this case, ERCU and Steffes advance two arguments in support of summary judgment on Integrity's conversion claim. The Court will first consider whether Integrity

had a viable security interest in the Tractors at the time they were sold, and then consider whether Talking Sales was a "buyer in ordinary course" when it purchased the Tractors from Wabasso Farm.

### A. Security Interest

ERCU and Steffes argue that Integrity's conversion claim cannot survive summary judgment because Integrity did not have a viable security interest in the Tractors at the time the equipment was sold at auction. (ERCU Mem. in Supp. at 14; Steffes Mem. in Supp. at 20.) According to ERCU and Steffes, Integrity waived its security interest in the Tractors when Ralph McCaffery, the Vice President of Integrity, expressly authorized and encouraged Wabasso Farm to sell its inventory. (ERCU Mem. in Supp. at 14-15; Steffes Mem. in Supp. at 25-26.) Pursuant to Vacura v. Haar's Equip. Inc., 364 N.W.2d 387 (Minn. 1985), ERCU argues that "when the creditor consents to the sale of collateral, the sale destroys his security interest in the collateral even though the consent was conditioned on the debtor remitting the proceeds of the sale to the creditor and proceeds were never remitted." (ERCU Mem. in Supp. at 14.) For the same proposition, Steffes relies on Citizens Nat'l Bank of Madelia v. Mankato Implement, Inc., 441 N.W.2d 483 (Minn. 1989), and Ottumwa Prod. Credit Assoc. v. Keoko Auction Co., 347 N.W.2d 393 (Iowa 1984). (Steffes Mem. in Supp. at 21.)

Integrity argues that summary judgment on the conversion claim is not appropriate because it had a viable security interest in the Tractors at the time of the auction, and did not subsequently waive such interest. (Mem. in Opp'n at 4-22.) In order for Steffes and

ERCU to prevail on their waiver argument, Integrity contends that they must show "(1) Integrity authorized the sale of [the Tractors] to [Talking Sales], and (2) the authorization was to sell [the Tractors] free and clear of Integrity's security interest." (Mem. in Opp'n at 7.)  Although Integrity admittedly knew that some of Wabasso Farm's inventory might be sold at auction, Integrity argues that it never authorized the sale of the Tractors to Talking Sales, nor did it authorize the sale free and clear of its security interest.  (Mem. in Opp'n at 7-13.)

Under the MUCC, a security interest in property continues following a sale or other disposition "unless the secured party authorize[s] the disposition free of the security interest."  Minn. Stat. § 336.9-315(a)(1).  Waiver is the intentional relinquishment of a known right and must be *clearly apparent* from the circumstances.  Churchill Bus. Credit v. Pacific Mut. Door Co., 49 F.3d 1334, 1336 (8th Cir. 1995) (emphasis added), citing Hauenstein & Bermeister, Inc. v. Met - Fab. Indus., 320 N.W.2d 886, 892 (Minn. 1982).  The First Agreement between Integrity and Wabasso Farm requires written consent to waive the security interest.  (See Second Carlson Aff. Ex. 6 ("Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent.").)

In this case, both Steffes and ERCU acknowledge that Integrity never gave written consent, but argue that Integrity gave oral consent to release its security interest in the Tractors.  (ERCU Mem. in Supp. at 16-17; Steffes Mem. in Supp. at 20-21.)  Both parties cite to Churchill Business Credit, where the Eighth Circuit stated that "authorization to

8

dispose of a security interest may be shown by oral consent, which acts as a waiver of the security agreement provision requiring that authorization to dispose of collateral be in writing." 49 F.3d at 1336, citing Citizens Nat'l Bank, 441 N.W.2d at 486-87.  ERCU argues that McCaffery, Integrity's Vice President, expressly authorized and encouraged the sale of Wabasso Farm's inventory at an auction based on McCaffery's testimony that he would be "happy" if Wabasso Farm sold its inventory and paid off the secured loans. (ERCU Mem. in Supp. at 14, citing McCaffery Dep. Tr. at 106.)  Steffes cites to several portions of McCaffery's deposition where he testifies that Integrity did not keep a close watch on Wabasso Farm's inventory to ensure that secured equipment was not sold, and argues that this behavior shows that McCaffery approved of a sale of the Tractors. (Steffes Mem. in Supp. at 26-29, citing McCaffery Dep. Tr. at 10, 119, 125, 166-68.)

None of the evidence highlighted by ERCU and Steffes shows that Integrity authorized a sale of the Tractors.  More importantly, there is no evidence that even if McCaffery knew about the impending auction, he authorized a sale of the Tractors free of Integrity's security interest.  The newest version of the MUCC, which became effective on July 1, 2001, clearly requires "that the authorized disposition to which [the statute] refers is an authorized disposition *free of the security interest*."  Minn. Stat. § 336.9-315(a)(2) (2005) (cmt. ¶ 2) (emphasis added).  Steffes and ERCU have not offered any evidence on this point.  Therefore, genuine issues of material fact exist concerning whether Integrity expressly waived its security interest in the Tractors.

     **B.**    **Buyer in Ordinary Course**

ERCU and Steffes contend that even if Integrity had a valid security interest in the Tractors at the time they were sold, Talking Sales' purchase of the Tractors was free of any such interest because Talking Sales was a "buyer in ordinary course of business," which is defined by the MUCC as:

> A person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices . . . . Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Article 2 may be a buyer in ordinary course of business . . . .

Minn. Stat. § 336.1-201(9). ERCU and Steffes argue that the statutory requirements are satisfied because (1) there was a sale of the Tractors, (2) Wabasso Farm was in the business of selling goods of that kind, (3) Talking Sales purchased the Tractors in its ordinary course of business, (4) the security interest in the Tractors was created by Wabasso Farm, and (5) Talking Sales purchased the Tractors in good faith and without knowledge that the sale would violate a security interest of a third-party. (ERCU Mem. in Supp. at 19-30; Steffes Mem. in Supp. at 17-20.)

Integrity counters that Talking Sales was not a buyer in ordinary course as defined by Minn. Stat. § 336.1-201(9). Integrity argues that Talking Sales was not a "buyer" because it was simply preserving Wabasso Farm's assets for Steffes, which had knowledge of Integrity's security interest in the Tractors. (Mem. in Opp'n at 14-17.) Integrity also contends that the transaction between Wabasso Farm and Talking Sales was

10

far from "ordinary," as evidenced by the Second Agreement between the parties, in which Talking Sales essentially agreed to act as a holding company for the Tractors until the auction in March 2004. (Mem. in Opp'n at 17-18; Second Carlson Aff. Ex. 14.)

The Second Agreement between Wabasso Farm and Talking Sales raises questions regarding whether there was a "sale" of the Tractors and whether the transaction was "ordinary." A contract and writings relating to the same transaction must be construed with reference to each other. Knut Co. v. Knutson Constr. Co., 433 N.W.2d 149, 151 (Minn. Ct. App. 1989), aff'd, 449 N.W.2d 143 (Minn. 1989). Contrary to arguments advanced by Steffes and ERCU, the Second Agreement clearly relates to the First Agreement concerning the Tractors: "this agreement is to confirm the payment arrangements between Talking Sales and Wabasso Implement for the (5) 9400 John Deere Tractors sold to Talking Sales on 1-21-04." (Second Carlson Aff. Ex. 6.) The Second Agreement sets forth payment terms which appear to shift some of the risk associated with finding another buyer for the Tractors back to Wabasso Farm — the Second Agreement requires Wabasso Farm to pay the principal and interest on the loan Talking Sales acquired through ERCU, and requires Wabasso Farm to pay the commission to Steffes if the Tractors are sold at the auction on March 4, 2004. (Second Carlson Aff. Ex. 6.) This calls into question whether there was a "sale" of the Tractors, or if Talking Sales was merely holding the Tractors for Wabasso Farm until Steffes sold them at auction. The Second Agreement also takes the transaction out of the realm of an "ordinary" business sale. (See McCaffery Dep. Tr. at 44-45 (testifying that he had a

11

conversation with Gerald Eichten, owner of Wabasso Farm, where Eichten told McCaffery that Talking Sales was "simply preserving assets for Steffes' auction").)

There is also a dispute regarding whether Talking Sales had knowledge of Integrity's security interest encumbering the Tractors at the time they were sold at the auction. In order to be considered a "buyer in ordinary course of business," a person must buy the goods in good faith, without knowledge that the sale violates the rights of a third party. Minn. Stat. § 336.1-201(9). In his deposition, Gerald Eichten, owner of Wabasso Farm, testified that he discussed the "Wells Fargo issues" with Brad Olstad, owner of Talking Sales and employee of Steffes, in January of 2004. (Eichten Dep. Tr. at 47-48.) Wells Fargo also had a security interest in some of Wabasso Farm's inventory, including the Tractors. (See Second Carlson Aff. Ex. 11.) This shows that Olstad was aware that security interests encumbered the Tractors before he made the purchase, which calls into question whether the purchase was made in good faith. Therefore, genuine issues of material fact exist regarding whether Talking Sales was a buyer in ordinary course of business, and the Motions for Summary Judgment by ERCU and Steffes on Integrity's conversion claim will be denied.

## II. Unjust Enrichment

Integrity's second claim is for unjust enrichment, based on the failure and refusal of Steffes and ERCU "to pay [Integrity] for a release of its liens in [the Tractors]" after "Defendants sold [the] said Tractors for a sum in excess of $342,403.29." (Am. Compl. at ¶ 29.) Integrity alleges that "Defendants have been unjustly enriched in an amount

equal to all proceeds received by said Defendants by and through the sale of Plaintiff's collateral." (Am. Compl. ¶ 29.)

Unjust enrichment is an equitable claim that arises when a party gains a benefit illegally or unlawfully, and there is no valid contract completely governing the rights of the parties. Stein v. O'Brien, 565 N.W.2d 472, 474 (Minn. Ct. App. 1997). A court may grant a claim of unjust enrichment even if it makes no express finding of fraud or an illegal act, but finds a wrongdoing "similar in nature to fraud." Heimbach v. Riedman Corp., 175 F. Supp. 2d 1167, 1180 (D. Minn. 2001.) To prevail on a claim for unjust enrichment, Integrity must show that Talking Sales and ERCU "knowingly received something of value [they were] not entitled to and under circumstances that would make it unjust to keep." See Guinness Import Co. v. Mark VII Distrib., Inc., 153 F.3d 607, 613 (8th Cir. 1998), citing Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).

ERCU argues that "because Integrity did not have an enforceable security interest in the Tractors, it cannot be said that [ERCU] knowingly received something of value it was not entitled to and under circumstances that would make it unjust to keep." (ERCU Mem. in Supp. at 32.) As discussed above (see supra § I), genuine issues of material fact exist regarding whether Integrity had a viable security interest in the Tractors at the time they were sold at auction. Therefore, ERCU's sole argument for dismissing Integrity's unjust enrichment claim fails.

Steffes contends that it was not unjustly enriched by the sale of the Tractors because "Steffes made less money by selling the tractors for Talking Sales rather than for [Wabasso Farm]." (Steffes Mem. in Supp. at 33-34.) Steffes would have made a four-percent commission selling the Tractors for Wabasso Farm, but instead made a two-percent commission selling the Tractors for Talking Sales. (Steffes Exs. 2, 5.) This fact does not resolve the issue of whether Steffes "knowingly received something of value it was not entitled to and under circumstances that would make it unjust to keep." See Guinness Import, 153 F.3d at 613. At the time the auction was conducted, Steffes was aware of Integrity's security interest in the assets of Wabasso Farm. (Steffes Dep. Tr. at 16-20.) Steffes was also aware of the transfer of the Tractors from Wabasso Farm to Talking Sales because Olstad, the Steffes' employee in charge of the auction, was involved in the transaction on behalf of Talking Sales. (Olstad Dep. Tr. at 12.) Thus, genuine issues of material fact exist regarding whether Steffes knew that it was not entitled to proceeds from the sale of the Tractors. Based on the foregoing, summary judgment on Integrity's unjust enrichment claims will be denied.

**III.   Negligence**

Integrity's final claim is for negligence. Integrity alleges that "Defendants had a duty to exercise reasonable care with respect to [the Tractors] to ensure that the rights of others, namely Plaintiff, were not harmed," and "Defendants failed to use reasonable care in causing [the Tractors] to be liquidated and sold to unknown third parties without honoring Plaintiff's lien rights." (Am. Compl. ¶¶ 32-33.)

14

Minnesota courts have defined negligence as the failure to exercise due or reasonable care. <u>Seim v. Garavalia</u>, 306 N.W.2d 806, 810 (Minn. 1981). In order to prevail on a claim of negligence, the plaintiff must prove four elements: (1) the existence of a duty, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty was the proximate cause of the injury. <u>Elder v. Allstate Ins. Co.</u>, 341 F. Supp. 2d 1095, 1099 (D. Minn. 2004), citing <u>Lubbers v. Anderson</u>, 539 N.W.2d 398, 401 (Minn. 1995). If an individual agrees to render professional services, that person is under a duty to exercise such care, skill, and diligence as another individual in that profession would ordinarily exercise under the circumstances. <u>Eveleth v. Ruble</u>, 225 N.W.2d 521, 524 (Minn. 1971).

In support of its Motion for Summary Judgment, ERCU advances two arguments. First, it argues that Integrity was not owed a duty because Integrity did not have a viable security interest in the Tractors at the time they were sold at the auction. (ERCU Mem. in Supp. at 33.) This argument fails because as discussed above (<u>see</u> <u>supra</u> § I), genuine issues of material fact exist regarding whether Integrity had a viable security interest in the Tractors at the time they were sold. Second, ERCU argues that even if it owed Integrity a duty, it exercised ordinary care when conducting the transaction involving the Tractors. (ERCU Mem. in Supp. at 33-34.)

Integrity argues that ERCU did not exercise ordinary care when participating in the transaction because it did not conduct a lien search in the Tractors, which would have revealed Integrity's security interest. (Mem. in Opp'n at 22.) Integrity also points out that ERCU had possession of the First Agreement and the Second Agreement, which gave

15

ERCU knowledge of the details of the agreement between Talking Sales and Wabasso Farm.  (Mem. in Opp'n at 22.)  Based on this, Integrity argues that ERCU did not act reasonably when participating in the sale of the Tractors.

Although neither Integrity nor ERCU has attempted to explain, through case law or proposed expert testimony, the "reasonable duty of care" for a bank in this situation, Integrity's argument that ERCU should have performed a lien search before financing the Tractors is reasonable.  The lien search conducted by Steffes on February 19, 2004, revealed 87 separate filings, including a claim filed by Integrity against Wabasso Farm on November 17, 2003.  (See Second Carlson Aff. Ex. 2.)  The lien search would have made ERCU aware of Integrity's security interest in the Tractors, and required additional consideration when ERCU gave the secured loan to Talking Sales.  The Court concludes that ERCU owed a duty of reasonable care to Integrity, and genuine issues of material fact exist regarding whether that duty was breached.

Steffes argues that it "conducted the Wabasso Farm auction using the reasonable professional standard of care " by conducting a lien search prior to the auction and paying out the proceeds from the Tractors accordingly.  (Steffes Mem. in Supp. at 35-36.)  Ordinarily, an auctioneer is the agent of the owner of the auctioned item.  State v. Tysdal, 228 N.W.2d 230, 232-33 (Minn. 1975).  Steffes concedes that as an agent for Wabasso Farm, it had a duty to seek out and tender payment of the proceeds from the auction on March 4, 2004, to Wabasso Farm's creditors.  (Steffes Mem. in Supp. at 35.)  Steffes argues that it properly paid ERCU first because ERCU had a purchase money security

interest in the Tractors, and Integrity had waived its security interest in the Tractors. (Steffes Mem. in Supp. at 35.) However, as discussed above (see supra § I), genuine issues of material fact exist regarding whether Integrity had a viable security interest in the Tractors at the time of the auction. Therefore, the Court cannot conclude as a matter of law that Steffes did not breach its duty to Integrity.

Because both Steffes and ERCU owed a duty of reasonable care to Integrity during the transaction involving the Tractors, and genuine issues of material fact exist regarding whether the parties breached that duty, the Court will deny summary judgment on the negligence claim.

## CONCLUSION

Based on the foregoing, and all of the files, records and proceedings herein, it is **ORDERED** that Defendant Elm River Credit Union's Motion for Summary Judgment (Doc. No. 58) and Defendant Steffes Auctioneer's Motion for Summary Judgment (Doc. No. 69) are **DENIED**.

Dated: January 27, 2006                          s/Richard H. Kyle
                                                                           RICHARD H. KYLE
                                                                          United States District Judge